UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY SEAN GORAK,

        Petitioner,

v.

ESKER LEE TATUM, Warden
And
BRAD D. SCHIMEL, Attorney General,

        Respondents.

Case No. 14-cv-1411-pp

**ORDER DENYING PETITIONER'S FEBUARY 2, 2015
MOTION FOR STAY OF WISCONSIN STATE COURT SENTENCE DETAINER**

In September of 2014, the petitioner filed this collateral attack on his state court sentence, pursuant to 28 U.S.C. §2254. The substance of the petitioner's action relates to whether a sentence imposed by the state court ought to run consecutive to, or concurrently with, a federal sentence which he has now completed.

On February 2, 2015, the court received the instant motion. In it, the petitioner indicated that his federal sentence was to expire on February 18, 2015. He asked the court to stay execution of the state sentence pending the court's decision on the merits of this *habeas corpus* action. He further asked the court to grant him release on bail pending the resolution of the *habeas* claims. The respondent has filed a response, opposing the petitioner's request.

The court starts by reiterating that it received the petitioner's request on February 2, 2015—sixteen (16) days before the date upon which his federal

1

sentence was to expire. Pursuant to Civil L.R. 7(b) of the Eastern District of Wisconsin's local rules, parties have twenty-one (21) days to respond to all motions except those for summary judgment and those designated as having been filed under L.R. 7(h). Thus, the petitioner's federal sentence was set to expire five (5) days before the deadline for the respondent to file its pleading. The respondent did timely file a responsive pleading on February 23, 2015—five days after the petitioner's federal sentence expired. Accordingly, before this motion was ripe for this court to decide, the petitioner already had been transferred to Dodge Correctional Facility in Wisconsin to begin serving the state sentence he now attacks.

Be that as it may, the practical relief the petitioner seeks is to be released from custody on bail until this court has had a chance to consider the merits of his *habeas* attack on the state court sentence.

In support of his request, the petitioner cites 28 U.S.C. §§2243 and 2251. Section 2243 simply describes the process for issuance of a writ of *habeas corpus*. More relevant to the petitioner's request is §2251(a)(1), which states that:

> A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

The petitioner is correct that this statute gives a federal court the discretion to stay a state proceeding "for any matter involved in the habeas corpus proceeding." The United States Supreme Court made clear in

2

McFarland v. Scott, 512 U.S. 849, 858 (1994) that "[s]ection 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court." The Supreme Court confirmed that dictate in a case involving a petitioner seeking a stay of execution in a death penalty case; federal courts have no less discretion in cases in which the penalty the petitioner attacks is not death. *See* Williams v. Chrans, 50 F.3d 1358, 1360 (7th Cir. 1995) ("The law governing stays of death sentences is, in general, the same as that employed in other situations.")

Thus, the question of whether or not to stay execution of the petitioner's sentence lies within this court's discretion. What factors guide the exercise of that discretion? The most recent case this court could find which contained such guidance was Whitecalf v. Young, \_\_ F.Supp. \_\_, slip op., 2015 WL 224982 (D.S.D., January 15, 2015). The Whitecalf court reviewed standards identified in a number of decisions from around the country, and concluded the following:

> Courts have articulated the following factors in deciding whether to grant a motion to stay under 28 U.S.C. § 2251 in non-capital cases:
>
> 1. Are substantial claims set forth in the petition?
>
> 2. Is there a demonstrated likelihood the petition will prevail?
>
> 3. Are there extraordinary circumstances attending the petitioner's situation which would require the grant in order to make the writ of habeas corpus effective, presumably if granted?
>
> In short, is this case distinguishable from other habeas corpus cases? Fn. 2. *Stepney v. Lopes*, 597 F.Supp. 11, 14 (D.Conn.1984) (citing *Iuteri v. Nardoza*, 662 F.2d 159 (2d Cir.1981); *Aronson v. May*, 85 S.Ct. 3 (1964); *Glynn v. Donnelly*, 470 F.2d 95 (1st

Cir.1972); *Eaton v. Holbrook*, 671 F.2d 670 (1st Cir.1982); *Monroe v. State Ct. of Fulton Cty.*, 560 F.Supp. 542 (N.D.Ga.1983); *Pfaff v. Wells*, 648 F.2d 689 (10th Cir.1981); *Bates v. Estelle*, 483 F.Supp. 224 (S.D.Tex.1980)); see also *Rado v. Meachum*, 699 F.Supp. 25, 26–27 (D.Conn.1988) (quoting; see also *St. John v. State of N.C.*, 745 F.Supp. 1165, 1167 (W.D.N.C.1990); *Richard v. Abrams*, 732 F.Supp. 24, 25 (S.D.N.Y.1990).

When analyzing a section 2251 motion to stay in accordance with the above factors, the court also must keep the principles of comity and federalism in mind. *Rado*, 699 F.Supp. at 263. A "petitioner ... seeking a stay of execution pending the final disposition of a habeas action does not enjoy a presumption of innocence" because the petitioner has already been convicted and exhausted his state appeals. *St. John*, 745 F.Supp. at 1167 (citations omitted). "A court considering a stay must apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.' " *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson v. Campbell*, 541 U.S. 637, 650, (2004).

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584 (citations omitted) (The Court analyzed granting a stay in the context of a capital case, however, the analysis is equally applicable in non-capital cases.); see also *St. John*, 745 F.Supp. at 1168 ("The state has a significant interest in bringing some degree of finality to its criminal prosecutions and the judgments of its courts after conviction .... an order by a federal court staying the execution of a sentence imposed by a state court interferes substantially with the state's interest, the federal court should "tread lightly before interfering.") (citing *Rado*, 699 F.Supp. at 26).

Id. at *1-2.

The Whitecalf court also noted that, while the Eighth Circuit Court of Appeals (which hears appeals from, among others, the District of South Dakota) did not have a decision directly on point, "the aforementioned three-prong test is substantially similar to the four-prong test applied by the

4

Eleventh and Fifth Circuits when deciding whether to grant stays of execution in capital cases. *See* Bundy v. Wainwright, 808 F.2d 1410, 1421 (11th Cir.1987); Brogdon v. Butler, 824 F.2d 338, 340 (5th Cir.1987)." Id. at n. 2, quotations omitted.

In the present case, the petitioner is not asking this court to bar a state court from prosecuting him. He already has been prosecuted, and convicted. He concedes in his pleadings that he is guilty of the offenses with which he was charged, and he concedes that those offenses were serious ones. The question he raises is the question of whether the state court, when it sentenced him, intended for the sentence he now is serving to run consecutively or concurrently to his federal sentence—an issue which became relevant more quickly than it might otherwise have because the Bureau of Prisons, as the petitioner himself notes, "elect[ed] to award him retroactive [concurrent] credit" which resulted in an earlier-than-expected termination of his federal sentence.

Applying the three-pronged test described in Whitecalf to this situation, the court finds that the petitioner has not demonstrated that the factors weigh in favor of his release on bail. As to the first prong—whether there are substantial claims set forth in the petition—the petitioner has presented a non-frivolous claim. A brief read through the various letters and amended sentencing documents demonstrates confusion about how the state court meant for the state sentence to interplay with the federal one. Is a non-frivolous claim, however, a "substantial" claim? The court need not wade into

5

that interpretative exercise, because the petitioner has not demonstrated that he meets other of the prongs.

The second prong asks whether the petitioner has demonstrated a likelihood that he will prevail on the claims he asserts. It is premature for this court to say who will prevail, of course, before the litigation has been fully engaged. The court notes, however, that based on the petitioner's own arguments and attachments, there is evidence that the state court meant the state sentence to run consecutively to the federal sentence. In addition, the court notes that the respondent has raised, in its motion to dismiss, a question of whether the petitioner has exhausted his remedies such that the court can even reach the merits of the claim. The court cannot conclude for its review of the existing file that the petitioner has demonstrated a "likelihood" that he will prevail.

Even had he demonstrated such a likelihood, however, the petitioner's request for release fails at the third prong of the Whitecalf test. The third prong asks whether there are "extraordinary" circumstances which would require the court to grant the request in order to make the *habeas corpus* relief effective if the court eventually were to grant it. The petitioner argues that he spent over eight years in custody on his federal sentence (and on the state sentences which ran concurrently to that federal sentence—whichever state sentences those may have been). He argues that if, in fact, the state court meant for the sentence he currently is serving at Dodge to run concurrently

6

with the federal sentence, then pretty much every day that he sits in Dodge is a day of custody that the state court didn't mean for him to serve.

"Extraordinary" circumstances, of course, are out of the ordinary for the current situation. In any *habeas* case, the petitioner is arguing that he ought not be in custody. If the danger that the petitioner alleges that he might spend more time in custody than he ought to, then every petitioner who files a *habeas* petition would be entitled to release. It is clear from the cases that the petitioner himself has cited that "extraordinary" circumstances means something more than that. For example, the petitioner cites Puchner v. Kruzicki, 918 F. Supp. 1271 (E.D. Wis. 1996) in support of his argument that this court ought to grant him release on bail. In that case, Judge Warren stayed a 60-day state court sentence of contempt during the pendency of the *habeas* proceedings. Contrary to the petitioner's argument that the Puchner decision supports his request, however, this case shows why this petitioner's request does *not* involve "extraordinary" circumstances. The family court judge in Puchner imposed a sentence of sixty days; the argument in the *habeas* petition was that Puchner hadn't been able to purge the contempt, and had not been given the opportunity to explain why. If he had demonstrated to the court that he couldn't purge the contempt, he'd not have been required to serve the sixty days. Id. at 1277-1278. So, to compare it to a criminal case, Puchner was arguing that he was not guilty.

Because the sentence was a short one (compared to the ones imposed on the petitioner in this case), there was no way that a federal court would have

7

been able to decide the *habeas* case in 60 days. If Judge Warren had not stayed the sentence, Puchner would have served the entire sentence and been out before the court even had a chance to decide whether he ought to have served the sentence in the first place. If the court hadn't granted the stay, it could not have made the grant of *habeas* relief effective if had later granted such relief (which, in fact, it did). Id. at 1280.

Similarly, many of the cases the petitioner cites in support of his request involve petitioners who received the death penalty. Death penalty cases obviously present "extraordinary" circumstances. If the court does not grant a stay in a death penalty case, the petitioner will be executed. If the court later decides in favor of the petitioner and decides that he/she should not have received the death penalty, or should get a new trial or a new hearing, the court can't go back and "undo" the death. Again, in the words of Whitecalf, if a court reviewing a collateral attack on a death penalty sentence does not stay that sentence, it cannot later make the *habeas* relief effective if it later decides to grant it.

If this petitioner eventually is successful in his *habeas* petition, there will be relief available; the court will be able to order him to be released immediately. He will not have passed away. Because he has served, at this point, less than a month of the state sentence, it is unlikely he will have completed the sentence. Accordingly, the court finds that the petitioner has not demonstrated the sort of "extraordinary" circumstance that requires this

court to grant him release on bail in order to make effective any *habeas* relief it might grant him in the future.

Accordingly, the court **DENIES** the petitioner's February 2, 2015 motion for stay of the Wisconsin sentence and request for bail.

**ORDERED** at Milwaukee this 13th day of March, 2015.

_____
Hon. Pamela Pepper
United States District Court