IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY SEAN GORAK,                           Case No. 14-cv-1411-pp

                        Petitioner,

v.

ATTORNEY GENERAL OF THE STATE OF
WISCONSIN and WARDEN MICHAEL MEISNER,

                        Respondents.

## DECISION AND ORDER GRANTING RESPONDENTS' MOTION TO DISMISS (DKT. NO. 17) AND DISMISSING THE CASE

## INTRODUCTION

On September 4, 2014, *pro se* petitioner Gregory Sean Gorak filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Dkt. No. 1. The petitioner is incarcerated in a Wisconsin state prison. The court screened the petition pursuant to Rule 4 of the Rules Governing §2254 Cases, and ordered the respondents to file an answer or responsive pleading. Dkt. No. 6. The respondents filed this motion to dismiss, Dkt. No. 17, and the petitioner has responded. Dkt. No. 33. The court grants the respondents' motion, and orders the case dismissed.

## I.    ISSUES WITH THE PETITIONER'S STATE COURT SENTENCE

The procedural history which led the petitioner here is somewhat tortured, and a detailed review of what has happened in his case is helpful in reviewing the question of whether the petitioner has defaulted on his

constitutional arguments, and if so, whether he can show cause and prejudice for the default.

On September 1, 2006, the petitioner was charged in Milwaukee County Circuit Court with six offenses, including possession of a Molotov Cocktail (party to a crime), carrying a concealed firearm and burglary. State v. Tatum, No. 2006CF004609, Dkt. No. 1. His preliminary hearing took place on September 8, 2006, and he was bound over for trial. The circuit judge set a scheduling conference for September 15, 2006. Id. at Dkt. No. 9.

On September 12, 2006, before the scheduling conference in the state prosecution could take place, the petitioner was indicted in the federal district court for the Eastern District of Wisconsin on two counts of unlawful receipt of an unregistered firearm. United States v. Gorak, No. 06-cr-216-1. After the initial proceedings, the federal court ordered the petitioner to be returned to state custody on a retainer, and to be brought back to federal court as necessary. Id. at Dkt. No. 5. On February 16, 2007, the petitioner pled guilty to one of the federal counts, and Judge Charles N. Clevert scheduled sentencing for May 23, 2007. Id. at Dkt. No. 39.

Meanwhile, back in state court, the petitioner pled guilty to Counts 2 (the Molotov cocktail count), 3 (carrying a concealed weapon) and 4 (burglary) of the state charges on April 19, 2007. Dkt. No. 18-2. The circuit court judge scheduled the sentencing for June 8, 2007—which would have been two weeks after the federal sentencing. Id.

2

Back in federal court, the federal sentencing had to be adjourned to June 7, 2007. United States v. Tatum, No. 06-cr-216 at Dkt. No. 41. The result of this scheduling change was that, one day before the petitioner was to be sentenced in state court, he was sentenced in federal court. Thus, on June 7, 2007, Judge Charles N. Clevert sentenced the petitioner to serve 118 months (nine years and ten months) in the custody of the Federal Bureau of Prisons, to be followed by three years of supervised release. Id. at Dkt. No. 45.

The following day, on June 8, 2007, the Milwaukee County Circuit Court issued the original judgment of conviction. Dkt. No. 18-1. Neither the petitioner nor the respondents provided the court with the original, un-amended June 8, 2007 order of judgment of conviction. The docket entry on the day of sentencing (Dkt. No. 143 in Case No. 2006CF004609, as reflected on the Wisconsin Circuit Court Access Program, or CCAP) states, in pertinent part, "The court sentenced the defendant to a TOTAL LENGTH of imprisonment of 6 years, *consecutive to any other sentence* [emphasis added]. The INITIAL TERM OF CONFINEMENT in the Wisconsin State Prisons is 3 years with credit for 9 days served." Dkt. No. 18-2. The docket entry further states that, as to Count 3, "Court sentenced defendant to serve 9 MONTHS in the House of Correction CONCURRENT with any sentence with credit for 276 days served." State v. Gorak, No. 2006CF004609, Dkt. No. 143.

The docket entry for Count 4 on the day of sentencing (Dkt. No. 142 in Case No. 2006CF0004609 in CCAP) states, in pertinent part, "The Court

3

sentenced the defendant to a TOTAL LENGTH of imprisonment of 10 years, *consecutive to any other sentence*. The INITIAL TERM OF CONFINEMENT in the Wisconsin State Prisons is 5 years with credit for 278 days time served." Id. (emphasis added). If one reads these two docket entries together—and assumes that they accurately reflect what the circuit court judge said—it appears as though the judge imposed both the Count 2 and Count 4 sentences to run consecutively "to any other sentence," and the Count 3 sentence to run concurrently to any other sentence. One could read the "consecutive to any other sentence" language to mean that the state court sentenced the petitioner to serve an additional eight (8) years of initial confinement (three for the explosive, five for the burglary) on top of the almost ten years of federal incarceration ordered by the federal court.

The parties have provided the court with the *amended* judgment—the court will discuss shortly how it came to be amended. Dkt. No. 18-1. The amended judgment indicates that the petitioner pled guilty to Count 2, Wis. Stat. §939.05, being party to the crime of selling, possessing, or manufacturing a Molotov cocktail in violation of Wis. State. §943.06(2). Id. at 1. This was a Class H felony. Id. The judgment further indicated that the petitioner pled no contest to Count 4, Burglary to a Building or Dwelling, in violation of Wis. Stat. §943.10(1m)(a). Id.

The next section of the judgment contains the sentences for the two convictions. Id. For Count 2, the sentencing date was reflected as June 8, 2007, and the sentence was reflected as "State Prison w/Ext. Supervision

6 YR." Id. Under the "Comments" section, the judgment reads, "**10/10/08 CONSECUTIVE TO Federal sentence." Id. For Count 4, the sentencing date was reflected as August 8, 2007, and the sentence was reflected as "State Prison w/Ext. Supervision 10 YR." Id. The comments section read, ""**6-25-2007; Credit for 318 days of sentence credit. **###Order dated May 6, 2011-CONCURRENT WITH COUNT THREE AND WITH THE FEDERAL SENTENCE." Id. Recalling that the court had imposed a nine-month stint in the House of Correction on Count 3, and ordered that it be served concurrently with any other sentence, one sees that in May 2011 (the date of the amended judgment), the court was indicating that the petitioner should serve the three-year sentence on Count 2 *consecutively* with his federal sentence, but should serve the five-year sentence on Count 4 *concurrently* with the federal sentence. The upshot of this was that the sentence structure the court articulated would require the petitioner to serve, not the almost 18 years he'd have had to serve had both the explosive and the burglary charge been imposed to run consecutively, but almost 13 years.

The next portion of the judgment is entitled "Total Bifurcated Sentence Time," and breaks each full sentence down into two components—an incarceration component and an extended supervision component. Dkt. No. 18-1 at 1. For Count 2, the judgment did the math as follows: "Imprisonment of 6 years in WSP. CONSECUTIVE TO THE FEDERAL SENTENCE. Credit for 0 days time served. Confinement of 3 years and extended supervision of 3 years." It then goes on to list the conditions of

5

confinement. Id. For Count 4, the judgment does the math as follows: "Imprisonment of 10 years in WSP. CONCURRENT WITH CT. THREE AND WITH THE FEDERAL SENTENCE. Credit for 318 days time served. Confinement of 5 years and extended supervision of 5 years. ***See Court Order dated May 6, 2011." Id. This section of the judgment, then, reiterates the intent of the prior section—that the petitioner was to serve the three-year initial confinement on Count 2 *consecutively* to the federal sentence, and to serve the five years' initial confinement on Count 4 *concurrently* with the federal sentence. Again, this resulted in a combined federal-and-state sentence of approximately 13 years, rather than the 18 that would have resulted if all of the sentences were to be served consecutively.

On June 25, 2007—seventeen days after the petitioner was sentenced—the circuit court docket reflects the following entry: "Correction to sentence entry of 6-8-07, in accordance with District Attorney's records and defense attorney, Count 4 was ordered to be served CONCURRENT. Amended judgment of conviction issued and forwarded to DCI and attorney." Dkt. No. 18-2 at 6. While this court does not know for sure, it appears that this docket entry was meant to remedy the error in the June 8, 2007 docket entry, State v. Gorak, No. 2006CF004609, Dkt. No. 142, which mistakenly indicated that Count 4 was to be served consecutive to the federal sentence.

The petitioner was busy after June 25, 2007. He filed numerous motions and petitions. One of these resulted in the following order from the Milwaukee

County Circuit Court, entitled "Order Correcting Judgment of Conviction." Dkt.

No. 1-2 at 24. The order is dated October 10, 2008, and states:

> On October 8, 2008, the defendant filed a motion to correct the judgment of conviction. He states that the judgment of conviction does not comport with the sentencing transcript in that [the sentencing judge] did not say that his sentence was to be consecutive to 'any other sentence.' The judge said his sentence was to be consecutive to his *federal sentence.* The defendant is correct. The judgment of conviction shall be amended accordingly.
>
> **THEREFORE, IT IS HEREBY ORDERED** that the judgment of conviction shall be corrected to reflect that the sentence on count two is consecutive to the defendants *federal sentence* and that the sentence on count four is concurrent with counts two and three and with his *federal* sentence. In addition, the judgment of conviction on count three shall be amended to reflect that the sentence is concurrent with count two and with his federal sentence. A copy of the corrected judgments of conviction shall be forwarded to the [Prairie du Chien] Correctional Institution.

Id.

This concise order contained one small anomaly—an anomaly that led, after much gnashing of teeth, to the petitioner's judgment being amended in May 2011, the event which is the genesis for this current habeas petition. The second paragraph of the order correcting the judgment states that "the sentence on count four is concurrent with *counts two* and three and with his *federal* (italicized in original) sentence . . . ." Id. (emphasis added). The court imposed the Count 2 sentence to run consecutively to the petitioner's federal sentence. This meant that he could not start serving Count 2 until after he had completed his 9-year-10-month federal sentence. Yet the October 10, 2008

7

correction stated that the Count 4 sentence would run concurrently with both the federal sentence *and* the Count 2 sentence. Given that the Count 4 sentence was five years in duration, and the federal sentence was over nine years in duration, the petitioner never would be able to serve his five-year Count 4 sentence concurrently with **both** the federal sentence and the Count 2 sentence.

Perhaps no one ever would have noticed this anomaly had the petitioner not continued to pursue his sentence credit/sentence reduction quest. But he did, which caused the following series of events to occur.

On October 20, 2008, the registrar at the Prairie du Chien Correctional Institution wrote a letter to the state court judge who sentenced the petitioner. Dkt. No. 1-2 at 15. The letter begins, "The Wisconsin Administrative Code . . . requires me as Registrar . . . to notify you in writing if the Judgment of Conviction in the above-referenced matter is unclear or appears to be without support in the statutes." Id. The letter indicates that Prairie du Chien had received "two separate amended judgments" in the petitioner's case—one for counts 2 and 4, and one for count 3. Id. The letter says that the first judgment "lists Count 2 as CS [consecutive] to [the petitioner's] Federal Sentence, and lists Count 4 as CC [concurrent] with Count 2 & 3 and with the Federal sentence." It further says that the second judgment "(Count 3) lists it as Concurrent to Count 2 and with the Federal Sentence." Id. The letter then explains, "In State v. Bagnall 61 W(2d) 297, 212 NW (2d) 122 (1973) the Court ruled that a sentence cannot be split with a portion served consecutive and a

8

portion served concurrent to another sentence. With this in mind, I respectfully request that the Judgement of Convictions to be amended to reflect a proper sentence in accordance with the Wisconsin Statutes." Id.

This letter is interesting in a couple of respects. First, it *does not* note the anomaly described above—the fact that it would be impossible for the petitioner to serve his Count 4 sentence concurrently with both the federal sentence and the Count 2 consecutive sentence.

Second, however, it does seem to have been clear to the registrar that the court had imposed Count 2 to run consecutively and Count 4 to run concurrently with the *federal* sentence. It appears that that the registrar was worried about one sentence running concurrently and the other consecutively—that by imposing the sentence in that way, the circuit court judge had violated the Supreme Court of Wisconsin's 1973 decision in State v. Bagnall, 61 Wis.2d 297 (Wis. 1973). In that case, the lower court had imposed a sentence of thirty years for a single offense (murdering a police officer), and had ordered that the first seven years of the sentence would run concurrently with any other prison term. Id. at 311. The Supreme Court stated, "This sentence was in error. In Goyer v. State this court said that it was error to impose a sentence for conviction of a single crime which runs concurrently in part and consecutively in part." Id. The court concluded by holding, "It is clear that terms in the Wisconsin state prison system are to be served concurrently or consecutively, but that a court cannot split a sentence and provide for only part of a term to be served concurrently with another." Id. at 312.

The state court judge must not have responded to the registrar's concerns, because on December 21, 2009—over a year later, and the day BEFORE the Wisconsin Court of Appeals would resolve the Bagnall "split sentence" issue—a records supervisor from Waupun Correctional Institute (the petitioner must, by that time, have been transferred) did two things. First, she sent an e-mail to someone name Carole Briones at the DOC. Dkt. No. 1-2 at 4. This e-mail regarded "verification of time served," and stated:

> [The petitioner] is petitioning the court for a sentence adjustment on Ct. 2 which is shown on his JOC as being CS [consecutive] to his federal sentence . . . . As you can see, on his Milwaukee Case 06CF4609 he was sentenced on 6-8-07 and the judge sentenced him to a term CS to his federal sentence on ct. 2 and a CC sentence on Ct. 4. He came to DCI [Dodge Correctional Institution] on 6-18-17 and it looks like they computed the case as though Ct 2 is currently being served along with Ct 4.

Id. The author goes on to state that while the petitioner had been in Prairie du Chien Correctional Institute in 2008, that facility had written to the state court judge, "stating State v. Bagnall (a sentence cannot be split with a portion served CS and a portion served CC to another sentence) and asked for clarification," but that the state court has not answered. Id. The author ends the letter by stating, "As far as I'm concerned he has not served any of ct. 2 at this point since the JOC was never amended to reflect CC [consecutive]." Id.

Second, the supervisor wrote to the state court judge, explaining that the petitioner was asking for verification on his time-served calculations. Dkt. No. 1-2 at 16. She stated, "When looking at the Judgement of Conviction for this case I note that it says Ct. 2 is to be served consecutive to his federal sentence,

10

however, Ct. 4 is to be served concurrent to Ct. 2 and concurrent to his federal sentence. He was sentenced on his federal case on 6-7-07 and his state case on 6-8-07 and admitted to Dodge Correctional Institution to begin his federal sentence upon release from the state." Id. The supervisor then goes on to reiterate what the Prairie du Chien registrar had said a year earlier, citing State v. Bagnall and arguing that "a sentence cannot be split with a portion served consecutive and a portion served concurrent to another sentence." Id.

This letter bears two handwritten notations in the bottom, right-hand corner. There is a notation farthest to the right, printed by hand, that says, "No Response from Court." Id. There is a statement written in cursive to the left of that one, which says, "12-23-09 Per Mike (Milw Co staff atty office) sentence is legal as is. See Ct. of Appeals Case 08AP2399." Id.

The court of appeals case to which the anonymous writer refers is the petitioner's direct appeal from the petitioner's motion asking the court to reconsider an order denying his motion for sentence credit. On December 22, 200, the District I Court of Appeals, Judges Curley, Fine and Brennan sitting, affirmed the trial court's ruling. State v. Gorak, No. 2008AP2399-CR (Ct. App. Dec. 22, 2009). The appeals court stated:

> [F]or the Molotov cocktail conviction, the trial court imposed a six-year sentence comprised of three-year periods of initial confinement and extended supervision. The sentence was imposed to run consecutively to a 118-month federal sentence imposed the previous day. For carrying a concealed weapon, the trial court imposed a nine-month sentence, and for the burglary, the trial court imposed a ten-year sentence comprised of five-year respective periods of initial confinement and extended supervision. Those sentences were imposed to run

11

> concurrently to each other and to the Molotov cocktail
> and federal sentences.

Id. at 2.

The decision goes on to explain that the petitioner had moved the state trial court to grant him 318 days of sentence credit on each of those three sentences. Id. The court granted that request as to the carrying a concealed weapon and burglary sentences (the concurrent sentences), but denied it on the Molotov cocktail sentence "because it was imposed consecutive to a federal sentence." Id. at 2-3. The petitioner moved for reconsideration, the trial court denied it, and the petitioner appealed to the court of appeals.

The court of appeals held, for a variety of statutory and practical reasons, that the petitioner could not get credit for time served on a sentence imposed to run consecutively to another sentence—in other words, on Count 2. It also denied his request to re-classify the Count 2 sentence to run concurrently, instead of consecutively. The court of appeals specifically addressed the split-sentence argument from State v. Bagnall, which had caused the Department of Corrections concern, stating, "[T]he count two sentence was imposed to run consecutively to the federal sentence; the fact that the other state sentences were imposed to run concurrently to that sentence does not render it a split sentence." Id. at 6. The court also noted that while the petitioner had argued that denial of sentencing credit had deprived him of his constitutional rights to equal protection and due process, the court now had given him that process, thus defeating those arguments. Id. at 7.

12

Thus, as of December 22, 2009, the Wisconsin Court of Appeals had resolved the Bagnall concern expressed by the DOC. It should have been clear at that point that the petitioner was to serve the Count 2 sentence consecutive to the federal sentence, and the Count 4 sentence concurrent with the federal sentence and the sentence on Count 3. No one yet had pointed out, or dealt with, the "can't serve Count 4 concurrent with both the federal sentence and the Count 2 sentence" problem.

Having failed to obtain sentence credit against his state court sentence, the petitioner turned to the federal court. On March 24, 2010, he filed a motion in federal court, asking the court to adjust his sentence, to grant him a concurrent sentence recommendation, and to amend his federal judgment. United States v. Gorak, No. 06-CR-216, Dkt. No. 54. The motion explained that the state court had imposed the Molotov cocktail sentence to run consecutively to the federal sentence, and the burglary sentence to run concurrently. Id. The petitioner argued that "[a] state court has no authority to order how a federal sentence is to be served." Id. at 2 (citing Jake v. Herschberger, 173 F.3d 1143 (9th Cir. 2001)). (As an aside, this court does not perceive that the state court issued any order trying to tell the federal court how the federal sentence should run, but that is what the petitioner argued.)

The petitioner argued to the federal court that "[t]he components of Gorak's related state offenses were considered relevant conduct and taken into account in the Pre-Sentence Report and his sentence guidelines' offense level was in fact increased 6 points because of such. This increased his offense level

13

exposure by approximately 73 months." Id. at 3. For this reason, the petitioner encouraged the federal court to take into account what the state court had done, and adjust the federal sentence downward so that it could be served concurrently with any remaining un-served portion of the petitioner's state sentence. Id. Judge Clevert denied this motion on July 16, 2010, indicating because the deadline for filing an appeal of the federal sentence had passed, only the United States Attorney could move for sentence reductions, as well as the fact that the Federal Rules of Criminal Procedure did not allow the court to do as the petitioner had requested. United States v. Gorak, No. 06-CR-216, Dkt. No. 57 at 1-2.

Several months later, on October 8, 2010, the chief of the federal Bureau of Prisons Designation and Sentence Computation Center wrote a letter to Judge Clevert. Id. at Dkt. No. 58. This letter informed Judge Clevert that the petitioner was asking for credit against his federal sentence for time he spent in state custody. The letter indicated that while federal statutory law prohibited a federal court from giving a defendant credit for time spent in state custody, a decision by the Third Circuit Court of Appeals, Barden v. Keohane, 921 F.3d 476 (3rd Cir. 1990), had caused the Bureau of Prisons to consider such requests from inmates as "a request for a retroactive (concurrent) designation." Id. at 2. The letter informed Judge Clevert that while any recommendation he might make about retroactive designation would not be binding, it would be helpful to the BOP in making its decision about whether to grant or deny the request. Id. The letter stated that if the BOP granted retroactive concurrent

designation, the petitioner likely would be released around February 2015. Id. If, on the other hand, the BOP denied the request, "Mr. Gorak's 188-month federal term will not commence until his release from state sentence." Id. at 2.

On November 23, 2010, Judge Clevert wrote back:

> In response to your letter of October 8, 2010, . . . please note that this court does not oppose the retroactive designation of the Wisconsin Department of Corrections as the place where Gregory Sean Gorak may serve his federal sentence. It appears that the retroactive designation would be consistent with the Wisconsin Circuit Court's intention that Gorak's state sentence be concurrent with his federal sentence and this court's consideration of the factors set forth in 18 U.S.C. §3553(a)(2).

United States v. Gorak, No. 06-CR-216, Dkt. No. 59.

Almost six months passed before the issue arose again. On April 28, 2011, the records supervisor at the Fox Lake Correctional Institution (the petitioner had been moved yet again) wrote Judge Clevert, the state court sentencing judge, the District I Court of Appeals, and the chief of the BOP's Designation and Sentencing Computation Center. Id. at Dkt. No. 60. The supervisor went through the history of events in the state court, and the District I Court of Appeals' affirmance of the trial court's decision indicating that the petitioner could not receive credit on the Count 2 sentence because it was imposed consecutively to the federal sentence. Id. at 1-2. She further noted Judge Clevert's 2010 response to the designation center, indicating that he had no objection with the federal sentence being served in the state facility, and basing that view in part on his belief that "the retroactive designation would be

15

consistent with the Wisconsin Circuit Court's intention that Gorak's state sentence be concurrent with his federal sentence." Id.

The supervisor then stated the following:

> In light of the retroactive designation of the federal sentence, we have again reviewed the sentence structure in this case. Now that the federal sentence is directed to be served concurrently, Inmate Gorak is currently serving Count 4 of 06CF4609 *and* his federal sentence. The release date for the federal sentence is estimated as on or after February 17, 2015.
>
> Although the Wisconsin sentence in 06CF4609 Count 2 is consecutive to the federal sentence, it also orders that Count 4 is concurrent with Count 2 and the federal sentence.

Id. at 2. She concluded by "respectfully ask[ing] the Milwaukee County Circuit Court to review the recent decision from the Federal Bureau of Prisons, and provide clarification about when the 6-year sentence for Count 2 should begin." Id. The Fox Lake Correctional Institution supervisor, then, finally had discovered the anomaly—that if Count 2 was to run consecutively to the federal sentence, and Count 4 was to run concurrently with the federal sentence, it was impossible for Count 4 to run concurrently to Count 2.

On May 6, 2011—eight days after the supervisor wrote her letter—the Milwaukee County Circuit Court entered an order amending the judgment of conviction. Gorak v. Tatum, No. 14-CV-1411, Dkt. No. 18-4. The order states that on May 3, 2011, the Department of Corrections had filed a "request for clarification with respect to the sentence structure on count four, and the defendant had filed a letter in response to the DOC's request." Id. (It is possible that the May 3, 2011 request to which the court refers is the April 18, 2011

16

letter—it may have taken four days to get to the Circuit Court by mail. The court cannot locate the petitioner's response to the letter.) The court stated:

> The sentence on count four was ordered to run concurrently with the defendant's federal sentence and concurrent with count two. Count two was ordered to run consecutive to the defendant's federal sentence. Because the federal sentence [9 years 10 months] is much longer than the sentence imposed in count 4 [5 years], count four will never run concurrently with count 2 [a 3-year sentence that would not start until the 9-year-and-10-month sentence in federal court was complete]. The court will remedy the situation by removing the language "concurrent with count two" from the sentence imposed in count four so that it will only run concurrent with the federal sentence. When the federal sentence is over, count two will commence to run.

Id.

Thus, the Milwaukee County Circuit court recognized the anomaly in the October 10, 2008 sentence amendment, and corrected it. The result of the May 6, 2011 order was to do one thing: remove the impossible requirement that the petitioner serve his Count 4 sentence concurrently with both the federal sentence and the Count 2 consecutive sentence. The court left in place its order that the petitioner serve his Count 4 sentence concurrently with the federal sentence, and left in place the requirement that the petitioner serve the Count 2 sentence consecutively to the federal sentence.

The petitioner did not appeal that order. Instead, on September 19, 2011, he filed a motion asking the state court to vacate the order amending the judgment of conviction. Dkt. No. 18-5. In this motion, the petitioner asserted that "[i]t was the stated intent of the Court in this Order that Gorak will be released from State of Wisconsin, (state), custody upon completion of the

17

Federal Bureau of Prisons, (BOP), to serve the remainder of his, now, concurrent federal term, then return to state custody to serve the Count II term sentence." Id. at 1. With the exception of his statement that he would get out of state custody and go to federal custody to finish the federal sentence (Judge Clevert had said he could serve the federal sentence in state custody), the petitioner appears to have accurately characterized the May 6, 2011 court's intent—as well as the original sentencing court's intent.

Despite the fact that all the May 6, 2011 order did was correct an impossibility anomaly and conform the sentence to the original June 2007 judgment, the petitioner argued in his motion to vacate that the May 6, 2011 amendment constituted an abuse of discretion, a violation of due process, double jeopardy, and a violation of his equal protection and due process rights. Id. He argued that the sentence "now is an illegally split sentence," that it violated his expectation of finality in sentencing, and that it increased the length of his sentence. Id. at 2. The petitioner continued to try to argue that his sentence violated State v. Bagnall, and argued that "it was the indisputable presumption in June of 2007 that Gorak's federal term was to be served CS [consecutively] to the state terms . . . [t]herefore, his state terms collectively must have begun on the date of imposition." Id. at 6. (The court assumes that the petitioner meant "CC" for concurrently, instead of "CS" for consecutively, in the previous sentence.)

His motion to vacate was sent back to him as being too lengthy, so the petitioner filed an "addendum" to the motion. Dkt. No. 18-6 at 2. At twenty-six

Case 2:14-cv-01411-PP   Filed 09/01/15   Page 18 of 37   Document 40

pages, the addendum did not solve the length problem, but did seem to clarify what he thought the May 6 order had done. He stated that the May 6, 2011 order "amended [the petitioner's] Judgment by removing the Concurrent (CC) designation from Count IV in relation to the Count II sentence, *effectively leaving count IV undesignated to that previously imposed state count.*" Id. The petitioner was wrong in that belief—the May 6 order did not render Count 4 undesignated. It remained designated to run concurrent to the federal sentence. It no longer, however, was subject to the impossible condition of being served concurrently with Count 2.

The Milwaukee County Circuit court, in an order dated October 4, 2011, denied the petitioner's motion to vacate. The court explained,

> Before the BOP decided to designate the defendant's federal sentence as retroactive to June 7, 2007, the Department of Corrections could not run count four concurrent with the federal sentence, because the federal sentence was not running and would not start running until after the defendant was released from state custody. However, once the BOP directed that the federal sentence be served concurrently with the defendant's state sentence, the DOC was able to run count four concurrent with his federal sentence as ordered by Judge Sosnay. A problem arose because Judge Sosnay also ordered count four to run concurrent with the consecutive sentence on count two. Because count four could not run concurrent with the federal sentence and with the consecutive sentence on count two, the DOC requested clarification. On May 6, 2011, the court amended the judgment of conviction by removing the language on count four that states "concurrent with count two.

Dkt. No. 18-7 at 1-2.

In denying the petitioner's motion to vacate, the circuit court pointed out that if the petitioner thought he'd already served his full count two term (which

19

he couldn't have, given that it was imposed to run consecutively to the federal sentence, and always has been), he should have filed a habeas corpus proceeding, and if he didn't agree with the May 6, 2011 order, he should have appealed it. Id. at 2. The court noted, as this court did above, that "[t]he May 6, 2011 order merely effectuated Judge Sosnay's original sentencing intent in this case, which was for count four to run concurrently with the federal sentence and Count 2 to run consecutively to the federal sentence." Id. Again, the petitioner did not appeal the circuit court's October 4 order.

## II.    SUBSEQUENT PROCEDURAL HISTORY

On October 5, 2011, the petitioner filed a writ of habeas corpus with the Wisconsin Court of Appeals. Dkt. No. 18-8. In that petition, he raised three grounds for relief: (1) denial of the right to presentence confinement credit; (2) denial of the right to receive post-sentence confinement credit; and (3) denial of the right to be free from an illegally split sentence. Id. at 9. He did *not*, however, raise again the constitutional issues of double jeopardy, ineffective assistance, due process, or equal protection. On September 7, 2012, the court of appeals denied the petition. Dkt. No. 18-9.

On September 21, 2012, the petitioner filed a motion for reconsideration. Dkt. No. 18-10. About two months later, on November 14, 2012, the petitioner filed two documents with the court of appeals. First, he filed an addendum to the motion for reconsideration. Dkt. No. 18-11. This document brought to the court's attention a letter from the Department of Corrections. Id. at 1. Second, he filed a supplement to his petition for habeas relief. Dkt. No. 18-12. In the

20

supplement, the petitioner asked the Wisconsin Court of Appeals to accept a "[s]upplement to his original petition to clarify . . . his [g]rounds for [r]elief." Id. at 1. He sought to add the "violation[s] of federal rights" in order "to preserve his right to ultimately seek relief in the Federal District Court." Id. To the three grounds for relief raised in his original petition for habeas relief, he added three additional grounds: (1) double jeopardy; (2) ineffective assistance of counsel; and (3) due process and equal protection. Id. at 3-5.

On December 27, 2012, the Wisconsin Court of Appeals, in a one-sentence order, denied the petitioner's motion for reconsideration. Dkt. No. 18-13. The petitioner sought review of that decision in the Wisconsin Supreme Court. Dkt. No. 18-14. The Supreme Court denied the petition on August 4, 2014. Dkt. No. 18-16.

The court notes that included among the other documents the petitioner attached to his various pleadings in this case is a December 4, 2013 letter from the records administrator at the Division of Adult Institutions ("DAI") in the Wisconsin Department of Corrections. Dkt. No. 1-2 at 6. Apparently, the petitioner had written to the DAI, asking questions about his release date. In the responding letter, the records administrator stated,

> Currently, your sentence structure reflects a maximum discharge date of July 20, 2016. You are currently in federal custody with an active detainer lodged against you for Milwaukee County Case 06CF4609 Count 2 that carries a sentence of 3 years confinement and 3 years extended supervision for a total of 6 years consecutive to your federal sentence. Per the Order Amended Judgement of Conviction for 06CF4609, dated May 6, 2011, states, 'Count two was ordered to run consecutive to the defendant's federal sentence.' The 6-year sentence for

21

06CF4609 Count 2 will not begin until you are available to Wisconsin DOC from federal custody.

<u>Id.</u>

### III. THE PETITIONER'S FEDERAL HABEAS ARGUMENTS

On September 4, 2014, the petitioner timely filed the instant §2254 petition. Dkt. No. 1. He argues that fifty-eight months after he'd started serving his sentences on the possession and burglary charges, the state court, acting *sua sponte*, amended the judgment and conviction order to remove the "concurrent" designation from Count 4 relative to Count 2. <u>Id.</u> He argues that he already has served his three-year sentence on Count 2, and complains that he's now being required to re-serve it as a result of the state court's May 6, 2011 order amending his judgment. <u>Id.</u> He asserts that this is the equivalent of increasing his sentence after he'd begun serving it, which, he alleges, violates the Double Jeopardy Clause of the Fifth Amendment. <u>Id.</u> at 6. He also argues that he was not afforded the assistance of counsel at the time the state court issued the May 6, 2011 corrected judgment, and thus that his sentence was increased in violation of his right to counsel under the Sixth Amendment. <u>Id.</u> at 8. Finally, he argues that the amended order of judgment violated his rights to due process and equal protection under the Fourteenth Amendment, because he was not given notice or the opportunity to be heard on the amendment. <u>Id.</u> at 9-10.

On November 12, 2014, Judge Adelman (who was the assigned judge at the time) screened the petition and ordered the respondents to file an answer or other responsive pleading. Dkt. No. 6. On February 16, 2015, the

22

respondents filed a motion to dismiss with an accompanying brief in support. Dkt. Nos. 17-18.

The respondents argue that the petitioner has procedurally defaulted on his claims by (1) failing to appeal the state court's order amending the judgment of conviction; (2) failing to appeal the state court's order denying the petitioner's motion to vacate the amended judgment of conviction; and (3) neglecting to raise the constitutional grounds for relief in his original petition for habeas relief filed in the Wisconsin Court of Appeals. Dkt. No. 18 at 7-8.

The petitioner filed responsive pleadings on June 2 and 3, 2015. Dkt. Nos. 31-33. He argues that no one ever informed him that he had a right to appeal the amended judgment of conviction. Dkt. No. 32 at 3-4. He concedes that he filed his writ of habeas corpus with the Court of Appeals before he received the circuit court's October 4, 2011 order denying his motion to vacate, but argues that he didn't receive the order on his motion to vacate until November 22, 2011, after the deadline for appealing that order had expired. Id. at 4. (He indicates that this was because he was in transit from one institution to another. Id.) He also argues that he did not receive notice that he could appeal *that* decision. Id. Finally, he disagrees that he did not raise the double jeopardy issue in his habeas petition before the Court of Appeals—he responds that this was the basis of "Ground 2." Id. (The court notes that "Ground 2" of his habeas petition before the state court of appeals indicates, "Denied right to receiving postsentence confinement credit on ct. II in violation of §973.15 Wis. Stats. & Wis. Const. Art. I § 8." Article I, Section 8 of the Wisconsin

23

Constitution is its Double Jeopardy Clause.) He argues that the appellate court didn't give him the opportunity to brief the issue. Id.

## IV. ANALYSIS

### The Petitioner Has Procedurally Defaulted on his Constitutional Claims, Because He Did Not Give the State Court a Full and Fair Opportunity to Review Them.

A. *State prisoners must present their constitutional claims to the state's highest court before filing those claims in a federal habeas petition.*

State prisoners must "exhaust" the remedies available to them in the state court system before a district court may consider the merits of constitutional claims in a federal habeas petition. 28 U.S.C. §2254(b)(1)(A); Dressler v. McCaughtry, 238 F.3d 908, 912 (7th Cir. 2001) (If a petitioner "either fails to exhaust all available state remedies or raise all claims before the state courts, his petition must be denied without considering its merits."). A federal district court cannot address the merits of the constitutional claims raised in a federal habeas petition "unless the state courts have had a full and fair opportunity to review them." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991) (citation omitted).

"A petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). A petitioner exhausts his constitutional claims when he has presented it to the highest state court for a ruling on the merits. O'Sullivan v.

24

Boerckel, 526 U.S. 838, 845 (1999); Arrieta v. Battaglia, 461 F.3d 861, 863 (7th Cir. 2006). Once the state's highest court has had a full and fair opportunity to evaluate the merits of the claim, a prisoner is not required to present it again to the state courts. Humphrey v. Cady, 405 U.S. 504, 516 n.18 (1972).

In this case, if the petitioner disagreed with the May 6, 2011 order amending his judgment of conviction, or the October 4, 2011 order denying his motion to vacate the amended judgment of conviction, he had to file any appeals "within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order . . . or within 90 days of entry if notice is not given . . . ." Wis. Stat. §808.04(1). If the petitioner did not meet that deadline, he would not be able to appeal the orders. State ex rel. Chic v. Hayes, --- N.W.2d ---, 2015 WL 4079239 (Wis. Ct. App. July 7, 2015). The Court of Appeals does not have jurisdiction over an appeal without the "timely notice of appeal," and the courts cannot extend the deadline for filing a notice of appeal. Id. (citing Wis. Stat. §§809.10(1)(e) and 809.10(4)).

The petitioner concedes that he did not timely appeal either the May 6, 2011 amended judgment and conviction order or the October 4, 2011 order denying his motion to vacate that amended order. As a result, the Wisconsin appellate courts have not had a full and fair opportunity to adjudicate his constitutional challenges to those orders.

B. *If a state prisoner fails to exhaust his claims in state court, the federal court may hear them only if the prisoner can demonstrate cause for that failure, and prejudice attributable to that default.*

The Supreme Court has determined that a habeas petitioner who defaulted on presenting his claims to the state court "must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." Murray v. Carrier, 477 U.S. 478, 485 (1986), citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Therefore, the court must determine whether the petitioner has shown cause for the default and prejudice resulting from the default, or that the failure to consider the claims has resulted in a fundamental miscarriage of justice.

C. *The petitioner cannot demonstrate cause for his failure to appeal the May 6, 2011 and October 4, 2011 orders.*

The petitioner argues that he had cause for failing to appeal the May 6, 2011 and October 24, 2011 orders. He argues that he was "never provided a notice of his right to appeal" the May 6, 2011 amended judgment of conviction, Dkt. No. 32 at 3-4, that he received the order denying his motion to vacate the amended judgment after the deadline for appealing (due to being in transit), id. at 4, and that he "was never provided a notice of his right to appeal" the October 24 order. Id.

To show cause, "a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court." Perruquet v. Briley, 390 F.3d 505, 514-15 (7th Cir. 2004) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). The Supreme Court has held that "'cause'

26

under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." Coleman v. Thompson, 501 U.S. 722, 753 (1991). See also Barksdale v. Lane, 957 F.2d 379, 385 (7th Cir. 1992) ("The Supreme Court has defined 'cause' as some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule.").

The petitioner alleges two "causes" for his failure to appeal the May and October 2011 orders. First, he alleges that no one told him he could appeal those orders. In essence, he argues that because he did not have counsel at that time, and is not a lawyer, he did not know that he could appeal the orders. He also appears to argue that the court or some other entity should have provided him with notice that he had a right to appeal the orders.

This first argument does not constitute cause for default under Supreme Court and Seventh Circuit precedent. In Coleman v. Thompson, the Supreme Court stated, "There is no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752 (citing Pennsylvania v. Finley, 481 U.S. 551 (1987) and Murray v. Giarratano, 492 U.S. 1 (1989)). Because there is no constitutional right to counsel in state post-conviction proceedings, "a petitioner's 'failure to act or think like a lawyer cannot be cause for failing to assert a claim.'" Barksdale, 957 F.2d at 385-386 (citing Henderson v. Cohn, 919 F.2d 1270-1272 (7th Cir. 1990)). See also McCoy v. Newsome, 953 F.2d 1252 (11th Cir. 1992) ("[S]tatus as a pro se petitioner, standing alone,

27

cannot be considered when determining whether he has shown cause for the default."). A petitioner's *pro se* status does not excuse procedural defaults. Salberg v. U.S., 969 F.2d 379, 383 (7th Cir. 1992). The petitioner "ha[s] the burden to demonstrate his own diligence in pursuing his claim[s]," and this petitioner has not done so. Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008).

The petitioner's second cause argument relates only to his failure to appeal the circuit court's October 4, 2011 denial of his motion to vacate. The petitioner states that he did not receive the state court's decision until after the deadline for appealing that decision had expired, because he was in transit from one facility to another.

The record contains no evidence supporting the petitioner's claim. He supplied the court with a copy of the October 4, 2011 order denying the motion to vacate; while it has a couple of Milwaukee County Circuit Court stamps on it, it does not have any notations on it indicating when the petitioner (or, more likely the facility in which the petitioner was housed at the time) received it.

The petitioner states that he did not receive the order "until late November as he left State custody on 11 October and was in transit via the U.S. Marshal's [sic] service until reaching FCI Elkton." Dkt. No. 1-1 at 20. Even if this is true—even if the petitioner did not receive the order until late November—it does not provide cause for his failure to appeal. As indicated above, Wisconsin law gives a defendant forty-five days from entry of the final order to file an appeal "if written notice of the entry of a final judgment or order

28

is given within 21 days of the final judgment or order." Wis. Stat. §808.04(1). But if, within twenty-one days of the final order, the court does not give written notice of the entry of a final order, then the statute allows a defendant to file the appeal "within 90 days of entry [of the order]. . . ." Id.

A review of the docket in the state case, State v. Gorak, No. 2006CF004609, does not reveal that any written notice of entry of a final judgment or order was entered. The circuit court's denial of the motion to vacate was docketed October 5, 2011; the next docket entry occurred when the court forwarded the case file to an assistant State Public Defender on November 17. Because the court did not provide the petitioner with written notice of the entry of a final order, the statute gave him ninety days from the date of that order to file an appeal. Ninety days from October 5, 2011 was January 3, 2012. Even if the petitioner hadn't received the decision denying his motion to vacate until late November 2011, he still would have had over a month to file an appeal. He did not do so, and as the court discussed above, the fact that he did not have a lawyer to advise him that he could appeal does not constitute cause.

   D.    *Even if the petitioner could demonstrate cause for his failure to appeal the two orders, he cannot demonstrate prejudice.*

Because the court finds that the petitioner has not stated cause for procedurally defaulting on his constitutional claims, it is not necessary for the court to determine whether he suffered actual prejudice. If the court were to consider that issue, however, it would conclude that the petitioner has not suffered actual prejudice.

In looking at the prejudice prong of the cause-and-prejudice test in the context of ineffective assistance claims, the Seventh Circuit has stated, "When challenging his sentence, a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." Richardson v. Lemke, 745 F.3d 258, 277 (7th Cir. 2014)(quoting Griffin v. Pierce, 622 F.3d 831, 844 (7th Cir. 2010)). "To establish prejudice, [a [a petitioner] 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error or constitutional dimensions.'" Id. at 515 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). To meet the "fundamental miscarriage of justice" requirement, the petitioner must demonstrate that he is actually innocent of the crime for which he was convicted—that is, he must convince the court that "no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." Id. (citing Schlup v. Delo, 513 U.S. 298, 327-29 (1995)).[1]

The petitioner argues that, instead of the prejudice standard laid out above, this court should apply a "fundamental fairness" standard. Dkt. No. 32 at 19. This court does not have the authority or ability to ignore, or replace, the jurisprudence created over years by the United States Supreme Court and the Seventh Circuit Court of Appeals. As an inferior trial court, this court, if it were

---

[1] The petitioner "admits that he cannot prove there was a 'fundamental miscarriage of justice' as defined by the prevailing case law." Dkt. No. 32 at 21 (emphasis omitted).

to consider the prejudice issue, would be bound to follow the decisions of those courts, and to apply the prejudice prong of the cause-and-prejudice standard.

The petitioner in this case did not have counsel, but the prejudice analysis is somewhat the same—is there a reasonable probability that, had the petitioner presented the arguments he makes now to the Wisconsin Court of Appeals on direct appeal of either the May 6 or October 4, 2011 orders, the result would have been different?

There is no such reasonable probability. As the court already has stated several times above, the May 6, 2011 order was not a "re-sentencing," nor did it "increase" the defendant's sentence. On the day Judge Sosnay sentenced him in June of 2007, Judge Sosnay imposed the Count 2 sentence to be served consecutively to—that is, after the completion of—the federal sentence. The original judgment states that fact. The amended judgment issued on October 10, 2008 states that fact. The amended judgment issued on May 6, 2011 states that fact. At every, single step of the tortured journey this case has taken, the state court has made it clear that the Count 2 sentence was to be served consecutive to the federal sentence—*after* completion of the federal sentence.

The petitioner's arguments are premised on the belief that when, on October 10, 2008, the state court erroneously stated that the Count 4 sentence should run concurrent to the federal sentence *and* to the sentence in Count 2, that error somehow transformed the original judgment on Count 2, and made the Count 2 sentence run concurrently with the federal sentence. Apparently the petitioner reasons that when the October 10, 2008 order said that Count 4

31

would run concurrently with the federal sentence and with Count 2, it *really* meant to say that the Count 2 sentence should run concurrently with the federal sentence and with Count 4. That is not what the court said on October 10, 2008. That is not what it said at the original sentencing in June 2007. The state court never said, at any point in the case, that it intended the Count 2 sentence for possessing a Molotov cocktail to run concurrently with the federal sentence. The Count 2 sentence always has been designated a consecutive sentence.

The petitioner also states that he already has served the three-year initial confinement portion of the Count 2 sentence, because he was in state prisons between his June 2007 sentencing and October 11, 2011. This, too, is a misapprehension. The federal court imposed its sentence first, on June 7, 2007. The petitioner thus had to serve the federal sentence first. If the state court—the second sentencer—imposed any concurrent time, the petitioner could serve that time at the same time he served the federal sentence. But he could not serve any *consecutive* state sentence until after the federal sentence was completed.

It is true that the petitioner served part of his federal sentence under the roofs of state prisons. As Judge Clevert indicated to the Bureau of Prisons in his letter of November 23, 2010, "[T]his court does not oppose the retroactive designation of the Wisconsin Department of Corrections as the place where Gregory Sean Gorak may serve his federal sentence." United States v. Gorak, No. 06-CR-216, Dkt. No. 59. Thus, all of the time that the petitioner served in

state prison between the date of his federal sentencing and the date he was transferred to federal custody counted as part of his federal sentence. It also counted as part of his Count 4 state sentence, because the state court imposed that sentence to run concurrently. But it did *not* count—*could not* count— against his Count 2 sentence, because again, the state court imposed that sentence to run *consecutively* to the federal sentence.

So—even if the petitioner had filed a direct appeal from the May 6, 2011 amended judgment, or from the October 4, 2011 order denying his motion to vacate that judgment, there is no reasonable probability that he would have prevailed in his argument that the May 6 order somehow increased his sentence, or changed the Count 2 sentence in some way.

Further, even if the petitioner had filed direct appeals from the May 6 and October 4, 2011 orders, the constitutional claims he raises in this habeas petition would not have prevailed. As the court already has noted, the Supreme Court has held that there is no constitutional right to counsel in state post-conviction proceedings, Coleman, 501 U.S. at 752, and so the petitioner could not have prevailed on his argument that the fact that he did not have a lawyer for the amendment of his sentence constituted a denial of his Sixth Amendment right to counsel.

It is true that the Double Jeopardy Clause of the Fifth Amendment "protects . . . against multiple criminal punishments for the same office," Monge v. California, 524 U.S. 721, 728 (1998) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Historically, however, the Supreme Court "ha[s]

33

found double jeopardy protections inapplicable to sentencing proceedings, because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" Id. (internal citations omitted) "Nor have sentence enhancements been construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'" Id. (quoting United States v. Watts, 519 U.S. 148, 154 (1997)). The May 6, 2011 order did not constitute a multiple punishment for the same offense. It did not enhance the sentence imposed in June 2007. It only corrected an impossibility error in the single punishment the state court had imposed for the Molotov cocktail offense. It did not implicate the Double Jeopardy Clause protections.

For the same reasons, the May 6 order did not violate the petitioner's due process rights. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Armstrong v. Manzo, 380 U.S. 545, 549 (1965)(quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)). The May 6 order did not deprive the petitioner of life, liberty or process; that had happened back in June of 2007. The May 6, 2011 order clarified an order already in place, to make clear that the court had not meant to impose an impossible condition.

Nor is it clear how the Equal Protection Clause is implicated in the petitioner's case. The Equal Protection Clause, as its name implies, requires all

34

criminal defendants to have equal protection under the law. The petitioner has not articulated any explanation for how the May 6, 2011 amendment to his sentence discriminated against him, or denied him equal protection under the law.

For all of the above reasons, the court concludes that the petitioner has procedurally defaulted on his claims, that he cannot demonstrate cause or prejudice, and that the court will grant the respondents' motion to dismiss.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

If a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. If a district court dismissed a habeas petition based on procedural grounds, without reaching the underlying constitutional claims, a certificate of

Case 2:14-cv-01411-PP   Filed 09/01/15   Page 35 of 37   Document 40

appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. Id. at 485.

In this case, the court is dismissing the petition on both grounds. The court concludes that its decision to dismiss the petitioner's claims is neither incorrect nor debatable among jurists of reason. The petitioner failed to properly present his constitutional claims to the Wisconsin Court of Appeals and he cannot show cause for the default, resulting prejudice, or the presence of a fundamental miscarriage of justice. Therefore, the court will not issue a certificate of appealability.

**CONCLUSION**

For the reasons explained above, the court concludes the petitioner's constitutional claims of double jeopardy, ineffective assistance of counsel, due process and equal protection are procedurally defaulted and that he cannot show cause for the default, resulting prejudice, or a fundamental miscarriage of justice. The court will not issue a certificate of appealability, because the petitioner has not made a substantial showing of the denial of a constitutional right.

The court **GRANTS** the respondents' motion to dismiss, and directs the clerk to enter judgment dismissing the action.

Dated at Milwaukee, this 1st day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge